Good morning. Mr. Bemby. Good morning, Your Honors. May it please the Court, I represent the petitioner in this matter in which the Immigration Judge and Board of Immigration Appeals determined that he had suffered past persecution in China because he opposed the birth control officials who took his wife away for a forcible abortion. He, as a result, went to a hospital for about two months and suffered some severe injuries. And the BIA said, well, there's a new regulation where they're no longer, if you have a disabled child, you can have a second child, which his wife did and changed circumstances in the country. And tell us why that was wrong.Well, as pointed out in the brief to the Board, that regulation, if you read the preamble that's reproduced in the State Department report, it appears that it was first promulgated in 1988 and the law was re-promulgated several times. It's true that with the testimony of Mr. Wong's wife in the second remanded hearing, she seemed not to be aware of that regulation as if it didn't exist. But as was argued in the brief, we believe that the regulation did exist. Based on some of the precedent decisions of this Court in Sharif, and there's another one about change of government in Georgia, where there was a very large change in government and this Court held that that was not a sufficient enough change of circumstances to rebut the presumption of past persecution. Also, as that regulation indicates, which is reproduced in the State Department report, it says if it appears that the child will not grow up to be normal. And when Mr. Wong's wife testified at the second remanded hearing, they were asking her questions about that and she said, well, I don't really know, but I speak to him, I call from time to time, and he may in fact be on the record as to whether he would be normal or not. And if he were normal, then the implication would be that they wouldn't be permitted to have a second child. But this is, as was mentioned in the briefs, kind of like mixing up two different standards. Mr. Wong was determined to have suffered past persecution because of his resistance to a coercive family planning policy. And if you take a look at both the 2008 and the 2007 State Department reports, which appear at the end of the transcript of the remanded hearing, the first few pages of the 2008 State Department report indicate a very deplorable human rights condition in China. A totalitarian regime, torture is widely implemented, it's a horrible situation. It doesn't sound like much of a change of circumstance. It's analogous to the conditions that still existed in, I guess it was Liberia, after Charles Taylor left the country and was being prosecuted elsewhere, which is, I believe those were the facts in the sheriff's case. The government still exists there, it's the Chinese Communist government. But in the second State Department report, the 2007 report, there's more details about the coercive family planning situation in China, and it doesn't seem as if it has died down at all. There are passages in that report, for example, that say that women could feel so much pressure that they have no other option but to agree to go along with an abortion. There's a specific language about Fujian province on page 190 of the joint appendix, which in one sentence it says, in some areas, violators of birth planning regulations were held and abused in, quote, population schools, which were nothing more than unofficial prisons. And that's Mr. Wang's case. He was the violator of the birth planning regulations. He already has a track record in China of having opposed the policy. There are other passages in there that say, couples seldom receive permission to have more than one child, although the government maintains that members of urban couples, well, et cetera, that's on page 190 of the joint appendix. So despite the existence of this regulation, the State Department also says, couples seldom get that permission. But what Mr. Wang was determined to have been involved with was his resistance. It's a separate issue as to whether or not they would get permission down the road to have another child. So you have a presumption of future prosecution. Persecution, rather. That's right. You're saying the government hasn't rebutted that. Yes, that's what we're trying to say. With what they presided, which was that there probably wouldn't be a problem because you had a second child in the United States and that there has been family, there has been some changes in China, but family planning policies would probably allow a second child. That doesn't go directly, you're saying, to that presumption of future prosecution. That's right. Also, to the extent that it may be an issue about the birth of a child in the United States, I'd just like to point out that when somebody returns to China with a U.S. passport, they're on a visa. They can stay 60 or 90 days. They can get an extension of that visa maybe for another 90 days. But you can't stay there longer than that on your U.S. passport. Otherwise, you'll be deported. If you want to remain there longer, you have to switch into the household registry system. And that's true as soon as you want to get any kind of benefit or acknowledgement from the government of your existence. And it says here on page 193 of the Joint Appendix that if not registered as permanent residents of China, i.e. not entered into the parent's household registration, they're not considered as permanent residents of China, and therefore not counted against the number of children. However, it says later, our understanding is that the parents of U.S.-born children who choose to register their children as Chinese permanent residents in order to gain the free education would not be able to exclude these children from the number of children allowed under Chinese family planning policy. However, Mr. Wang has gone beyond that. Now that he has two children, there's no suggestion that he would be stopped from having, that he would now require permission once again if they were to have additional children. Mr. Bemby, how do you deal with our precedents? We've decided several cases involving Chinese nationals who spend some time in the United States and have children here and then are repatriated to China. And those precedents generally hold that China treats them differently than people who did not have children in the United States, and we've written in several opinions that rather than forced sterilization or forced abortion, there is a monetary price to pay – 10,000, 20,000 renminbi, something like that. How do you get around those precedents in this case? Well, there's two ways we do that in this case. The first response, and most germane to Mr. Wang, is that he was – he resisted a course of family planning policy. His fear is what are the consequences of doing that, regardless of whether he had a child in the United States or he didn't have a child in the United States. That's kind of like a secondary issue. Just with the State Department report, the passages that I mentioned have – present a lot of evidence to show that the policy still exists, that there are – there's tortures, there's these types of arrests, there's this type of reeducation, schooling for people who have violated the policy. So the government – Even after 16 years? Well, he would be known as somebody who had opposed the government. The government in this case would have had the burden to introduce evidence to counter the presumption, and the evidence in the State Department report is contrary to that. But on the second issue about the U.S.-born children, though, I would respectfully submit that, as I mentioned, you can only stay so long in China on a U.S. passport, and eventually you have to come into the household registry system. And this State Department report indicates that once that occurs, then you're counted as part of the course of family planning policy program. If we granted the petition and we wanted to – could we remand this case and give the government another try, or can't we do that? What's your position? Or shouldn't we do that, rather? Well, I suppose based on the Supreme Court decisions, it's probably required that it has to be remanded. But we would submit that the government had a shot to introduce the evidence, and it failed to do that. And the record is what it is right now, and it would permit a decision to be made. If there are no further questions. Good. Any further questions? Good. We'll give you – you can save that for rebuttal if you need it. All right. Thank you very much. Thank you, Mr. Bemby. Ms. Friedman? Good morning, Your Honors. My name is Nancy Friedman on behalf of the Attorney General. As the Court already noted, talking with Petitioners' Counsel, the issue that's facing the Court today is whether the government rebutted the well-founded fear. We're not disputing what happened to him in China, of course, because there is a finding that he was persecuted. So the focus is, did the government introduce evidence to rebut it? What do we have to do to overcome the presumption? It has to be specific, too, doesn't it? It has to go to that presumption, doesn't it? Yes. Yes, Your Honor. Distill this to the bottom line. Okay. What exactly do you have that does that? Okay. Let me distill it, as you say, by looking at what the Board said. And the Board said a couple of things. That is, that the policy regarding a first child that has some disability came into effect. And the other thing the Board said, and let me point to that very specifically, on page 3 of the record, the Board talks about the passage of time in this case. Well, aren't there cases that say that the mere passage of time isn't enough? Correct, Your Honor. I agree with that. The mere passage of time is not enough, but I think that there's more in this case. And let me go back and focus on what happened to the petitioner and why there was a finding of persecution. It's because in 1996, there was this incident where he got into a fight with the family planning officials and was injured and so forth. That's the basis of the persecution. So after 1996, let's look at what happened. So that's not going to happen again? Yes, Your Honor. And let's look at why. And how would the fact that this change in policy that you mentioned, how would that guarantee that they're not going to take further action against him for what he did in the past? Well, I'm not going to say there's any guarantee for certain on anything. But what we can say is what the record tells us and what the petitioner himself testified to at the hearing, specifically, well, of course, the incident with the family planning officials was in 1996. He stayed in China until 2005. Nothing happened to him during those many years. Well, his wife wasn't pregnant then. Correct. Well, he's not, I assume Mr. Bemby would concede that if they were to go back to China and his wife weren't pregnant, he has little to worry about. What I understand the case to be is that he has a fear that if she becomes pregnant again, they're going to do to her exactly what they did to her before. And in turn, they will do to him what they did to him before. Well, I'm not sure if that's correct because what his testimony is, and let me be specific, his testimony is that he fears he'll be persecuted because he has a second child, not because he got into the fight in 1996. I'm referring to page 103 of the petitioner's testimony, page 103 in the record. They're specifically asking, what are you afraid of if you return? And he says a couple of things. He says he's afraid because he has a second child, and he's afraid that he'll be fined or incarcerated or tortured because he came to the United States using a smuggler, a snakehead. He doesn't say he's afraid because I'm afraid the family planning officials will come and beat me up again. He still has the presumption, whether he realizes it or not. Correct, Your Honor. And isn't it a logical inference that he would also be afraid if his wife were to get pregnant again? But he didn't. Or the third child? He didn't. That's not what the evidence tells us, Your Honor. I think what we're challenging you on is you can't carry your burden by talking about what he failed to do. As I understand the burden, the government needs to point to evidence to indicate that he will not be mistreated the way he was mistreated before. And I'm with you, speaking only for myself. If the question is, having had a child in the United States, returning home, we have ample case law that shows why you need to win on that. But those cases, what distinguishes this case from those is, to the best, correct me if I'm wrong, I don't believe in any of those cases the government had the burden. I agree with you, Your Honor. So here, this is sort of an interesting, challenging case, because how does the government prove, where can you tell us in the record, as Judge Van Antorp had asked you a little while ago, where in the record do we have any confidence that he will not be beaten, et cetera, again, if his wife becomes pregnant again? Okay, I agree with your thinking there. And so I'm going to go back to where I started this morning, and that's saying what does the government need to show to rebut the presumption? How much is enough? And what the evidence was that the Board relied on here is a couple things. The fact that there was the law dealing with first child having a disability, and the second was that all these years passed by that he remained there without anything happening to him. And there's no evidence to say, you know, his wife would get pregnant again and that he would have another fight with the family. I'm just not sure nothing happening to him in China between 96 and 05 helps you at all, because you'd only expect him to be mistreated if his wife were pregnant again, and there's no evidence that that happened. And another question I have is I don't see anything in the record as to when these laws were changed or how they were changed. There's a troubling evidentiary void in my mind there, because can you tell us when they were changed and how they were changed? All the BIA really said was the laws were changed. Well, how, why, when? Right. How and why, I certainly can't answer that. The when part... Well, how you can answer, because you can say, well, it used to say this in 1992, and then in 2002 this was changed to that. What was changed and when was it changed? I'm at a loss. Right. I can't answer those questions because I don't see anything in the record that would tell us that. What's in the record was that there were the amendments as late as 2001, I think it was. But we don't even know what was amended. I can't tell that specifically. I mean, that's, you know, if we're going to hold somebody liable for a $10,000 fine on a tax case, can we, on the grounds that the law was changed, you know, can we point to a change in the criminal code and say, well, hey, the United States Code, the law was changed. Well, but if the law was changed in a way that's not even remotely germane to the issue, how can we rely on it at all? Well, I'm not completely convinced that it matters when the change happened, but wouldn't it have an effect that the law is that today, you know, whether the change was in. . . It would in a case where they have the burden. But what I find interesting about this case is if you are Mr. Wong and this befell you in the 90s, what confidence should he have that they're going to treat him differently merely because the law may have changed in the interim? Well, one answer to your question would be the fact that I think he and his wife both testified that they didn't know if there was such a law or, you know, they didn't. . . They weren't aware. But they would be today and could potentially take advantage of it. And that should give them confidence in their former government? They fled? Well, like I say, Your Honor, I'm not able to guarantee anything, but what I'm trying to. . . In this case, we decided, and I think it's pronounced Bershai, B-E-R-I-S-H-A-J. I'm going to read a quote from that case. You, the government, are required to, quote, introduce evidence that on an individualized basis rebuts a particular applicant's specific grounds for their well-founded fear of future persecution. Yes. We said that. Yes. What specifically did you present that rebuts? I can't find it that rebuts this presumption of future persecution in this case. Well, let me answer that by going back to what is his fear of persecution based on? Not looking at the past, but if you return to China tomorrow, what do you fear and why? And he answered the question in his testimony. He said he fears sterilization because he has a second child. So, you know, the isolated incident in 1996 wasn't the basis of his fear. So to rebut the fear that he expressed, the government introduced evidence of a couple of things. What the law is for somebody in his specific situation, and the fact that he was in China for X years, from 1996 to 2005, he was supposed to go to some re-education classes. I mean, the family planning officials didn't operate in a way that said, you know, we know what you did to us. You beat us up. We beat you up, and we're going to punish you for it. They knew where he was. He was supposed to go to re-education classes. He went for a couple of them, and then he said, but I never went back. So it wasn't a case where he was trying to hide from officials. All these years went by, and he was asked, well, why didn't you try to leave sooner? That strikes me as a very good argument. If your burden is merely to provide evidence that counters what he articulates to be his fear, right? He articulates that he's fearful because he has a second child. You produced the 2007 country reports and other evidence that show that that's not going to subject him to persecution. So you seem to be on somewhat of solid footing on that, but I'm just not fully convinced that that's the scope of your burden. Does the government's burden only require the government to come forward with evidence to counter what he testifies at the hearing, or is the government required to counter all reasonable inferences to be drawn from what past persecution he actually suffered? I think the government is required to rebut the presumption of a well-founded fear based on the record evidence, and the record evidence- And his statements don't limit that record evidence. Well, I was going to say the record evidence includes the beating and everything associated with it. I agree with that, Your Honor. I agree with you there. But the record also, as a whole, tells us, you know, that years went by, and he wasn't followed or pursued by family planning officials for any reason. And he worked. He was a driver at a company before. He was a driver at a company after. So for a period of time, they didn't persecute him. Yeah. That's really what you're relying on. All that seems to be- That's in part. You seem to be relitigating the credibility. I mean, you won initially, right? There was an adverse credibility finding. Correct. But at the second hearing, we're assuming he's credible. So how much stock can we put into the fact that he stayed in China from 1996 to 2005? I think a very significant amount of stock because what happens to you in China should be- His wife wasn't pregnant then. Only bad things. Am I correct in understanding that he was persecuted only after his wife and because his wife got pregnant? Yes. So if she's not pregnant from 1996 to 2005, it's unremarkable that he was not persecuted during the time she was not pregnant. Not necessarily, Your Honor, because I think they were persecuting him because he got in a fight during that one incident. That was the basis. Why did he get in the fight? Because they were taking his wife. That's understandable. But I'm not sure- And he was pretty badly beaten. He lost his job. Well, he lost his job because he was out of work for a long time, not because they were punishing him specifically for- Why was he out of work for a long time? Because he was injured from the fight. I understand where you're going. I'm just trying to differentiate it from cases where, you know, somebody is fired for their political opinion or something. If we granted the petition and we sent this back, as we really have to, I assume, do you get a second chance to try to rebut the presumption? Would that be what would happen? Well, I don't know what else a remanded hearing would be for other than to- I mean, you could present more evidence. Yes, Your Honor. So I will conclude and thank the Court for its time. Any other questions?  Thank you very much, Ms. Friedman. Mr. Bemby? Mr. Bemby? Sir, the government seems to be relying, in large part, on the fact that there was a period of time when your client was not beaten or harassed. What do you say to that? Well, I'd like to note in the record, I believe, that it indicates that his wife had to have an IUD two times. The first time they removed it and she became pregnant and she was forcibly aborted. Then she had the IUD a second time. When she came to the United States, she had that removed. In China, the IUDs that they insert are different than the ones in the United States, and it's not really borne out in the record, but I've heard many cases where it's indicated that those are health-threatening, just being required to wear that type of IUD, and that's, of course, why she didn't become pregnant. But the State Department reports show that there's a broad societal system set up, for example, at the workplace to the work units could be punished if a woman violates the policy. So there's a great deal of social pressure applied to get people to conform to this. And it's the government's burden, once again, and the documents that were submitted in the record allegedly to rebut, maybe to rebut the presumption of the State Department reports show the contrary, overwhelmingly that the policy still exists, and that's very brutal. But what about the fact that your client didn't express any fear about his wife getting pregnant and him getting beaten again? The record cited by the government is that he expressed the fear that he would be punished because his wife had a second child. His failure to mention something is not evidence that, in other words, the government had the responsibility to come up with evidence to rebut what's in the record. And the review by this Court of the record as a whole, that contains the State Department report. If Mr. Wang didn't have an opportunity to go into the information that's in the State Department report, nonetheless, it's part of the record. So at a hearing when the petitioner testifies and says, I'm afraid of X or I'm afraid of X and Y, it's not enough for the government to rebut X and Y? The government has to rebut A through G and other things not imagined? It's not imagined. How do we define the government's burden, I guess is what I'm asking? By preponderance of the evidence that's in the entire record. Yeah, but what's the scope of it? Does the government need to rebut everything imaginable based on what the nature of the past persecution was, or does the government have to rebut only what? They have to have a solid piece of evidence, for example, something that says there's an amnesty, anybody who was beaten in China has nothing to worry about, or the policy no longer exists. But the information in the State Department reports, the pages that I mentioned, overwhelmingly point that the evidence is all in one direction, and that's the policy exists, and that there's beatings and there's prison camps. The one-child policy. Yes. I mentioned the education system that I quoted from that page, and the State Department report says this, which is basically an unofficial prison. So they had to come up with some evidence, and a person's silence is not evidence. Sometimes it might be in the immigration context, but in a very brief hearing, relatively brief hearing, where they don't take the time to go line by line through the State Department report and ask him if he's heard of this and if he knows this to be the case or not, but the evidence is contained in the State Department report, then that's not evidence that rebuts the presumption of persecution. The government would have to come up with some kind of written report or witness to come in and say the contrary. It says that he and his wife can have as many children as they want when they return to China. Or that he's got nothing to fear that he'll never be beaten again. Well, isn't it true that he has nothing to fear unless she becomes pregnant? No, I don't think so, because anyone... Why would they care about him 16 years later? If she doesn't become pregnant, why do they care about him? Well, the government would have the burden to show some documents that the Chinese government forgives and forgets. But what's contained in the record shows a government that brutally punishes and murders people who oppose it, who speak out against the government in any way imaginable. So the evidence just is not in the record. The government should have come up with something. If there were remand... It sounds like you're asking for a per se rule that anyone in China who has suffered past persecution is... How could the government possibly carry the burden as you describe it? They should write a report and submit it into the record. And the report would say what? That China has repealed its one-child policy and that there's reproductive freedom in China. They'd have to get a witness and show that this witness has a basis for having some knowledge. And that witness could say whatever the witness knows to be the case. But that's not in this record. It seems to me you're asking for something that might be impossible to give. But I'm not sure the government has to do that much for you to win in this case. All right. Well, if there are no further questions... Any other questions? Good. Thank you. The arguments were excellent. We will take the matter under advisement. Thank you.